# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | | |
|---|---|---|
| JAMES STEPHEN SAUTER and | ) | |
| PIPER  SAUTER, Individually and as the | ) | |
| Natural Guardians of M.S., a minor | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:12-cv-00027-TWP-WGH |
| v. | ) | |
| | ) | |
| PERFECT NORTH SLOPES, INC., | ) | |
| ANDREW  BROADDUS, | ) | |
| STEPHANIE  DANIEL, | ) | |
| CHRISTOPHER  DANIEL, | ) | |
| JENNY  WARR, and ANTHONY  WARR, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON SUMMARY JUDGMENT

Following a tragic accident which occurred at Defendant Perfect North Slopes, Inc.

("Perfect North Slopes") on January 30, 2011, Plaintiffs James Stephen Sauter ("Mr. Sauter")

and Piper Sauter ("Mrs. Sauter") (collectively, "the Sauters") filed this negligence action.

Perfect North Slopes is a ski resort which among other activities, offers snow tubing, a

recreational activity that involves sitting on an inner tube and sliding down a hill.  The Sauters

were at Perfect North Slopes with their three children, T.S. age 8, J.S., and M.S. age 10

(collectively, "the Sauter children"), on January 30, 2011, for a Boy Scouts event.  While snow

tubing, the Sauter children veered into Defendants', Andrew Broaddus, Stephanie Daniel,[1]

Christopher Daniel, Jenny Warr, and Anthony Warr (collectively, "Snow Tube Defendants"),

snow tube lane, after which the Snow Tube Defendants collided into the Sauter children.  As a

result of the collision, M.S. suffered a brain injury.

---

[1] The Court notes that the Complaint and CM/ECF caption use this spelling for Stephanie Daniel's name.  However, Snow Tube Defendants' briefing uses the spelling, "Stephany Daniel."  If "Stephanie" is incorrect, the parties are ordered to file a motion to correct the error.

The Sauters filed suit against both Perfect North Slopes and the Snow Tube Defendants for negligence. Before the Court are the Defendants' separate Motions for Summary Judgment. The issue of Perfect North Slopes' alleged negligence has not been briefed, and the sole issue before the Court regarding Perfect North Slopes is the validity and applicability of the release form signed by Mrs. Sauter.  For the reasons set forth below, Perfect North Slopes' Motion for Summary Judgment (Dkt. 75) is **DENIED** and the Snow Tube Defendants' Motion for Summary Judgment (Dkt. 85) is **GRANTED**.

## I. <u>BACKGROUND</u>

**A.     Snow Tubing and Perfect North Slopes**

Perfect North Slopes is a ski resort located in Lawrenceburg, Indiana.  It has terrain parks, ski slopes, and a snow tubing hill.  Snow tubing involves sitting or lying inside a round inner tube and riding at a quick speed down a snow-covered slope.  To reach the top of the snow tubing hill, patrons at Perfect North Slopes ride a moving walkway called the "magic carpet" up to the top of the hill.  The snow tube hill is divided into multiple lanes separated by packed snow barriers approximately one foot high.  On January 30, 2011, there were nine express lanes, nine regular lanes, and four super lanes on the snow tubing hill.  Express lanes were longer than regular lanes and the super lanes were wider than regular lanes.  The snow tubing hill flattens into a gravel lot called the "run-out" area, which is approximately 180 feet long.  Snow tubers can average between 20 and 40 miles per hour down the hill.

Perfect North Slopes employees are located at the top of the snow tubing hill to direct the flow of patrons down the hill.  The employees specifically determine when it is safe for patrons to proceed down the hill and they assist the patrons' start by pushing or pulling the tubes into the

designated lane. Perfect North Slopes also has employees located at the bottom of the hill to assist patrons exiting the snow tube area.

On January 30, 2011, Perfect North Slopes had rules and regulations governing use of the snow tubing hill. The rules and regulations were posted throughout the park, as well as broadcast on a loud speaker system.  Only one rider was allowed per tube.  Linking – allowing a number of tubers going at one time in one lane – was allowed as conditions warranted.  Linking was to be single file and "[w]hen linking, tubers must hold on to each other's short tube handles the entire time."  Dkt. 85-23 at 2.  Perfect North Slopes' website FAQs stated that, "[o]n the main hill, as many as three tubes can 'link' together." Dkt. 129-10 at 2. Perfect North Slopes also recommended that parents supervise their children at all times.

**B.     The Releases**

Before participating in snow tubing, all patrons were required to sign a release form prepared by Perfect North Slopes.  On January 30, 2011, Perfect North Slopes provided the Snow Tube Defendants with a release titled "Skiing/Snowboarding/Tubing Waiver".   Mrs. Sauter was provided a release titled "Snow Tubing Release of Liability".   The two forms differed in language.

The Skiing/Snowboarding/Tubing Waiver included the following language in its "YOUR RESPONSIBILITY CODE":

> A. Always stay in control, and be able to stop or avoid other people or objects.
> B. People ahead of you have the right of way.  It is your responsibility to avoid them.
> C. You must not stop where you will obstruct a trail, or are not visible from above.
> D. Whenever starting downhill or merging into a trail, look uphill and yield to others.
> E. Always use devices to help prevent runaway equipment.
> F. Observe all posted signs and warnings.  Keep off closed trails and out of closed areas.

3

G. Prior to using any lift, you must have knowledge and ability to load and unload safely.
This is a partial list.  Be safety conscious.

Dkt. 85-21 at 1.   This waiver also states that, "as a skier/snowboarder/slider, I have responsibilities to myself and others to ski/ride/tube safely and in control."  Dkt. 85-21 at 1. Each of the five Snow Tube Defendants signed this release.

Conversely, the Snow Tubing Release of Liability form did not have a personal responsibility code.  It included language releasing Perfect North Slopes of liability for claims of personal injury, death and/or property damage.  Dkt. 85-20 at 1 (under seal).  It acknowledged acceptance of risk of snow tubing as a hazardous activity and risk of injury.  It specifically stated, "I authorize Perfect North Slopes Ski Patrol to administer treatment in the event of an injury to myself or to the minor for whom I am signing."  Dkt. 85-20 at 1 (under seal).  It further stated:

> I, the undersigned, acknowledge that I have read this agreement and release of liability and I understand its contents and in the event that I am signing on behalf of any minors, that I have full authority to do so, realizing its binding effect on them as well as myself.  I understand that my signature below expressly waives any rights I may have to sue Perfect North Slopes, Inc. for injuries and damages.

Dkt. 85-20 at 1 (under seal).  Mrs. Sauter filled in the names of her three children and signed and dated this release.

## C.    The Collision

After Mrs. Sauter signed the release, Mr. Sauter took their three children to the "magic carpet," where he escorted the children in line and then left.  The Sauter children and Snow Tube Defendants each made their way to the top of the snow tubing hill.  The Sauter children went to Express Lane 7 and the Snow Tube Defendants went to Express Lane 8.  The Sauter children linked their tubes and were pushed down the lane by Perfect North Slopes employee Kelsi

4

Carlson ("Ms. Carlson").   Unfortunately, at some point during their ride, the Sauter children veered out of their lane into Express Lane 8 and came to a stop before the end of the lane 8.  Two of the Sauter children got out of their tubes and were pulling the third child in his or her tube toward the "magic carpet".   The Snow Tube Defendants had linked their five tubes and were pushed down lane 8 by Ms. Carlson.  Stephanie Daniel went down the hill backwards in her tube and could not see where the tube was going. The Snow Tube Defendants collided with the Sauter children in Express Lane 8, approximately 25 feet short of the end of the snow tube slope.  The Snow Tube Defendants' tubes continued down Express Lane 8 after the collision and came to a stop in the gravel run-out area.  Both Stephanie Daniel and Christopher Daniel suffered minor injuries from the collision.  M.S. was knocked unconscious by the collision and was seriously injured.

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in

search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. <u>DISCUSSION</u>

As previously discussed, the Sauters' Complaint alleges both Perfect North Slopes and the Snow Tube Defendants were negligent. Perfect North Slopes filed a motion for summary judgment based on the Snow Tubing Release of Liability and the Snow Tube Defendants move for summary judgment on the bases that they acted reasonably at all times and owed no duty to the Sauter Children. The motion's are addressed in turn.

**A.      Snow Tube Defendants' Motion for Summary Judgment**

The Court must first address whether the Snow Tube Defendants owed a duty of care to M.S., because in the absence of duty a claim of negligence necessarily fails. *See Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010). The Snow Tube Defendants contend they had no duty of care toward the Sauter children, and thus should be dismissed from the suit. The Sauters contend that the duty was assumed upon signing the Skiing/Snowboarding/Tubing Waiver. Specifically, the Sauters rely on the waiver's clauses that signors agree to "[a]lways stay in control, and be able to stop or avoid other people or objects," and "[tube] safely and in control." Dkt. 85-21 at 1.

In Indiana, "[i]f a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1268 (Ind. Ct. App. 2002). To make this determination, "it is

the court's duty to ascertain the intent of the parties at the time the contract was executed as disclosed by the language used to express their rights and duties." *Walker v. Martin*, 887 N.E.2d 125, 135 (Ind. Ct. App. 2008). "Generally, only parties to a contract or those in privity with the parties have rights under a contract." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996). The Indiana Supreme Court has stated that:

> One not a party to an agreement may nonetheless enforce it by demonstrating that the parties intended to protect him under the agreement by the imposition of a duty in his favor. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Id.* at 1315 (quoting *Kirtley v. McClelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990)).

The Snow Tube Defendants argue that the Skiing/Snowboarding/Tubing Waiver does not affirmatively create a duty of care of the signor of the waiver to other patrons at Perfect North Slopes. The Court agrees. The waiver included the following general language:

> A. Always stay in control, and be able to stop or avoid other people or objects.
> B. People ahead of you have the right of way. It is your responsibility to avoid them.
> C. You must not stop where you will obstruct a trail, or are not visible from above.
> D. Whenever starting downhill or merging into a trail, look uphill and yield to others.
> E. Always use devices to help prevent runaway equipment.
> F. Observe all posted signs and warnings. Keep off closed trails and out of closed areas.
> G. Prior to using any lift, you must have knowledge and ability to load and unload safely.
> This is a partial list. Be safety conscious.

Dkt. 85-21 at 1. This list of responsibilities appears at the beginning of the waiver and by signing the waiver, a signor attests that he or she is "familiar with and will adhere to" the responsibilities. The waiver also states: "as a skier/snowboarder/slider, I have responsibilities to

myself and others to ski/ride/tube safely and in control." Dkt. 85-21 at 1. This statement appears within the first full paragraph of the waiver, in which the signor also acknowledges the risks of the snow sports offered at Perfect North Slopes, Perfect North Slopes' lack of duty to warn of dangers, and that participating in snow sports is voluntary with knowledge of the aforesaid risks.

The Court is not persuaded by the Sauters' argument that the recitation of these responsibilities, even with the acknowledgment of the signor to adhere to them, represents an affirmative assumption of a duty of care. First, the "Your Responsibility Code" includes basic safety instructions and concludes with the words, "This is a partial list. Be safety conscious." This implies not that the list imposes affirmative duties that are actionable if ignored, but that it is a general guideline. Second, the statement that the signor will tube safely and in control is included as one of many acknowledgments in a paragraph that ends with the statement, "I . . . hereby expressly agree to accept and assume all such risks of [in]jury or death associated with the sport of snow skiing/boarding/tubing." Dkt. 85-2 at 1. This affirmative assumption of the risks does not mention the responsibilities listed within the same paragraph. Instead, the language regarding the responsibilities includes the words "recognize," "familiar," and "agree." However, it does not affirmatively state the signor "assumes" those responsibilities.

Especially considering that the Sauters are third parties to the contract between the Snow Tube Defendants and Perfect North Slopes, there is no evidence that "it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed." *OEC-Diasonics, Inc.*, 674 N.E.2d at 1315. While performance of the responsibilities listed certainly would benefit third parties like the Sauters and M.S., there is no evidence of clear intent as required.

Further, to the extent the contract language is ambiguous regarding the assumption of a duty of care, the extrinsic evidence of record supports the Snow Tube Defendants' position. The Director of Snow Sports Operations at Perfect North Slopes, Mike Mettler ("Mr. Mettler"), explained during his deposition that the "Your Responsibility Code" section of the Skiing/Snowboarding/Tubing Waiver was derived from the "Skier's Responsibility Code" developed by the National Ski Areas Association as a standard code for all skiers and snowboarders. Dkt. 85-7 at 5, 111:14–20. Mr. Mettler testified that there are not standard rules for snow tubing, the "Your Responsibility Code" did not apply to snow tubing, and that snow tubing is inherently distinct from skiing or snowboarding, particularly because a snow tuber lacks the ability to steer and control the tube. Dkt. 85-7 at 5, 111:22–25; Dkt. 85-8 at 51–53, 214:22–216:21; Dkt. 85-8 at 51, 214:6–21. Perhaps also telling, the Snow Tubing Release of Liability signed by Mrs. Sauter did not include a "Your Responsibility Code" section or any similar language. Mr. Mettler testified that Perfect North Slopes was transitioning from the Skiing/Snowboarding/Tubing Waiver to the Snow Tubing Release of Liability for snow tubers and that it was by chance that the Snow Tube Defendants and Sauters signed different release forms. He further stated that there were no distinction between the forms in terms of responsibilities while snow tubing. Dkt. 85-8 at 50, 213:7–17.

Mr. Mettler's explanations support the conclusion that the Snow Tube Defendants did not assume a specific duty of care to other patrons. First, Perfect North Slopes did not expect or intend for snow tubers to have the exact abilities and safety responsibilities as skiers and snow boarders given the differences between the sport activities. Second, Perfect North Slopes was phasing out use of the Skiing/Snowboarding/Tubing Waiver for snow tubing, and the new form, the Snow Tubing Release of Liability, did not include any mention of responsibilities to stop and

give right of way to other patrons.  It is illogical that Perfect North Slopes would intend for some snow tubers to affirmatively assume a duty of care to other patrons, while other snow tubers did not. The random nature of who signed which form is evidence that Perfect North Slopes considered the two forms to contain the same obligations and releases.

Accordingly, the Court finds that the Sauters have not established as a matter of law that the Snow Tube Defendants affirmatively assumed a duty of care to the Sauter children.  Nor have the Sauters established a common law duty existed.  Therefore, the Snow Tube Defendants' motion is **GRANTED** and they will be dismissed from the suit.

## B.     Perfect North Slopes' Motion for Summary Judgment

At first glance, Perfect North Slopes' motion is seemingly straightforward, as it contends that the Sauters released all claims for liability when Mrs. Sauter signed the Snow Tubing Release of Liability form on behalf of her children.  The Sauters respond with two arguments in the alternative.  First, they ask the Court to invalidate the release on public policy grounds, an issue on which the Indiana Supreme Court has not spoken.  Second, the Sauters contend the language of the release does not contain a waiver of claims on behalf of minors.  Because the Court finds that the release is ambiguous and thus does not bar the Sauters' claim against Perfect North Slopes, the Court will not speculate on the public policy issue raised by the Sauters.

The Sauters contend that the Snow Tubing Release of Liability does not waive a minor's possible negligence claims against Perfect North Slopes.  The Indiana standard of review for contract interpretation is as follows:

> "Construction of the terms of a written contract is a pure question of law for the court, reviewed de novo." *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002). If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *City of Indianapolis v. Kahlo*, 938 N.E.2d 734, 744 (Ind. Ct. App. 2010), *trans. denied*. If a contract is ambiguous or uncertain, its meaning is determined by extrinsic evidence and its construction is a matter for

the fact-finder. *Kahlo*, 938 N.E.2d at 744.  An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004). But the fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity. *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1013 (Ind. 2010) (citation omitted).

When interpreting a written contract, the court should attempt to determine the parties' intent at the time the contract was made, which is ascertained by the language used to express their rights and duties. *Kahlo*, 938 N.E.2d at 744.  A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Hammerstone v. Ind. Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013).

*Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1097 (Ind. Ct. App. 2013).  Furthermore, an ambiguity may be patent or latent:

A patent ambiguity is apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning.  Extrinsic evidence is not admissible to explain or remove a patent ambiguity.  Conversely, a latent ambiguity does not emerge until one attempts to implement the words as directed in the instrument. Extrinsic evidence is admissible to explain a latent ambiguity.

*Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232 (Ind. Ct. App. 2013) (internal citations omitted). If an ambiguity arises by reason of the language used, construction of the ambiguous contract is a question of law for the court. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 80 (Ind. Ct. App. 2010).

The Sauters present the release form as a dual-purpose document; a medical authorization on one hand, and a release of liability on the other.  They argue that nowhere does the release explicitly release the claims of minors, and the only reference to minors is in regard to medical authorization. The Court agrees that at best, the release is ambiguous regarding whether a minor's claims against Perfect North Slopes are waived.

Specifically, the release is written from the viewpoint of an adult signor.  Each paragraph and sentence references that the signor understands, accepts, or agrees to the release's terms.

However, in the fourth paragraph, the release changes structure and states, "I authorize Perfect North Slopes Ski Patrol to administer treatment in the event of an injury to myself or to the minor for whom I am signing." Dkt. 85-20 at 1 (under seal). In the seventh and final paragraph the release also states, "I, the undersigned, acknowledge that I have read this agreement and release of liability and I understand its contents and in the event that I am signing on behalf of any minors, that I have full authority to do so, realizing its binding effect on them as well as myself." Dkt. 85-20 at 1 (under seal). Perfect North Slopes argues this final statement applies to the entirety of the agreement, while the Sauters argue it applies only to the medical authorization.

Contract interpretation requires "the contract to be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless." *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 56 (Ind. Ct. App. 2009). Here, the release inserts a specific reference to minors only regarding medical authorization. It does not reference minors regarding acceptance of risk, awareness that tubing is a hazardous activity, or releasing Perfect North Slopes from damage resulting from negligence, or any other clause. This disparity creates a susceptibility of more than one interpretation of the release's provisions. However, if Perfect North Slopes' interpretation that the final statement applies to the entire release was accepted, the specific reference to minors regarding medical authorization would be rendered redundant or unnecessary. Rather, it is reasonable to interpret the release as referencing minors when the release specifically applies to them, which is reiterated at the conclusion of the release. Thus, the Court finds the contract ambiguous. The ambiguity is a patent one, as it is inherent in the language of the document. In this circumstance, extrinsic evidence is not admissible or necessary to the Court's determination. The release does not include a clear, unambiguous

12

waiver of M.S.'s claims against Perfect North Slopes for its alleged negligence.  Therefore,

Perfect North Slopes' motion is **DENIED**.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Snow Tube Defendants' Motion for Summary

Judgment (Dkt. 85) is **GRANTED**.  The Sauters' claims against the Snow Tube Defendants are

**DISMISSED with prejudice**.  Perfect North Slopes' Motion for Summary Judgment (Dkt. 75)

is **DENIED**.  The Sauters' negligence claim may proceed.  No final judgment will issue for the

Snow Tube Defendants until the remaining claims against Perfect North Slopes are resolved.


**SO ORDERED.**

Date:  01/03/2014   _____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Wilmer E. Goering, II
ALCORN GOERING & SAGE, LLP
goering@agslawyers.com

Michael C. Peek
CHRISTOPHER & TAYLOR
mickpeek@abatelegal.com

Curtis L. Cornett
CORS & BASSETT, LLC
clc@corsbassett.com

K. Lee Cotner
COTNER LAW OFFICE
thecotners@msn.com

Louise M Roselle
MARKOVITS, STOCK & DEMARCO, LLC
lroselle@msdlegal.com

Paul M. De Marco
MARKOVITS, STOCK & DEMARCO, LLC
demarcoworld@yahoo.com

Steven P. Langdon
MCNEELY STEPHENSON THOPY &
HARROLD -NA
splangdon@msth.com

David Scott Strite
O'BRYAN BROWN & TONER PLLC
strited@obtlaw.com

John Patrick Schomaker
SMITH ROLFES & SKAVDAHL
COMPANY, L.P.A.
pschomaker@smithrolfes.com

Jeremiah Robert Seebohm
SMITH ROLFES & SKAVDAHL
COMPANY, L.P.A.
jseebohm@gmail.com